IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| CAROLYN ANDERSON, On Behalf of Herself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>EMERGENCY MEDICINE SPECIALISTS, L.L.P. (a/k/a and/or d/b/a FASTERCARE URGENT CARE CENTER, FASTERCARE URGENT CARE & WELLNESS CENTER and/or FASTERCARE), MARK INGRAM, and MISTY INGRAM,<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§ CIVIL ACTION NO. 3:20-cv-1368<br>§<br>§ COLLECTIVE ACTION<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff, Carolyn Anderson ("Plaintiff"), on behalf of herself and all others similarly situated, files this Complaint against Emergency Medicine Specialists, L.L.P. (a/k/a and/or d/b/a Fastercare Urgent Care Center, Fastercare Urgent Care & Wellness Center, and/or Fastercare) ("Fastercare"), Mark Ingram, and Misty Ingram (collectively "Defendants"), showing in support as follows:

## NATURE OF THE CASE

1. This is a civil action brought by Plaintiff pursuant to the federal Fair Labor Standards Act, 29 U.S.C. §§ 201-219, and the federal Portal-to-Portal Pay Act, 29 U.S.C. §§ 251-262, (collectively "FLSA/PPPA") for Defendants' failure to pay Plaintiff time and one-half her regular rate of pay for all hours worked over 40 during each seven day workweek during the time period relevant to this lawsuit.

2. Plaintiff worked for Fastercare as an hourly paid nurse practitioner from approximately July 2017 to approximately May 2020. During that time period, Fastercare, by

actions of its officers, owners, and/or managers Mark Ingram and Misty Ingram, changed Plaintiff's label between 1099 independent contractor and W-2 employee although Plaintiff was an employee at all times under the FLSA/PPPA and entitled to time and one-half her regular rate of pay for each and every hour worked over 40 during all workweeks.

3.  During all time periods that Defendants labeled Plaintiff as a so-called 1099 independent contractor, it did not pay Plaintiff time and one-half her regular rate of pay for each and every hour worked over 40 although Plaintiff regularly worked over 40 hours per workweek during such time periods.

4.  During some workweeks in which Defendants correctly labeled Plaintiff as W-2 employee, it did not pay Plaintiff time and one-half her regular rate of pay for all overtime hours worked.

5.  Plaintiff files this lawsuit on behalf of herself and as a FLSA/PPPA collective action on behalf of all other similarly situated current and/or former hourly paid nurse practitioners of Fastercare who, like Plaintiff, are not/were not paid time and one-half their respective regular rates of pay for all hours worked over 40 in each seven-day workweek in the time period of three years preceding the date this lawsuit was filed and forward.

6.  Plaintiff and the collective action members seek all damages available under the FLSA/PPPA, including back wages, liquidated damages, legal fees, costs, and post-judgment interest.

## THE PARTIES, JURISDICTION, AND VENUE

**Plaintiff Carolyn Anderson**

7.  Plaintiff is a natural person. She has standing to file this lawsuit.

8. By filing this lawsuit and complaint, Plaintiff consents to be a party plaintiff to this FLSA/PPPA action pursuant to 29 U.S.C. § 216(b). Plaintiff's consent to join is attached to this Complaint as Exhibit A.

**Collective Action Members**

9. The putative collective action members are all current and/or former hourly paid nurse practitioners who work/worked for Defendants that are not/were not paid time and one-half their respective regular rates of pay for all hours worked over 40 for Defendants during each seven-day workweek in the time period relevant to this lawsuit. Because Defendants do not and did not pay all overtime premium compensation to its hourly paid nurse practitioners who routinely work(ed) in excess of 40 hours per workweek, Plaintiff and the putative collective action members are all similarly situated within the meaning of Section 216(b) of the FLSA/PPPA.

10. Plaintiff reserves the right to redefine the class, request more than one class, and/or request sub-classes relative to any motion for conditional certification filed in this lawsuit.

**Defendant Emergency Medicine Specialists, L.L.P. (a/k/a and/or d/b/a Fastercare Urgent Care Center, Fastercare Urgent Care & Wellness Center, and/or Fastercare)**

11. Fastercare is a domestic limited liability company.

12. During all times relevant to this lawsuit, Fastercare has done business in the State of Texas.

13. At all times relevant to this lawsuit, Fastercare is and has been an "enterprise engaged in commerce" as defined by the FLSA.

14. At all times relevant to this lawsuit, Fastercare employed, and continues to employ, two or more employees.

15. At all times relevant to this lawsuit, Fastercare employed two or more employees who engaged in commerce and/or who handled, sold, or otherwise worked on goods and/or materials that have been moved in and/or produced for commerce by any person.

16. For example, Fastercare employed two or more employees who regularly handled, sold, and/or otherwise worked on goods and/or materials in their daily work that are/were moved in and/or produced for commerce. Examples of such goods and/or materials include medical equipment, medical supplies, computers, computer related equipment, and communications equipment.

17. On information and belief, at all times relevant to this lawsuit, Fastercare has had annual gross sales or business volume in excess of $500,000.

**Mark Ingram**

18. Mark Ingram is a natural person who resides in Dallas County, Texas.

19. During Plaintiff's work for Fastercare, Mark Ingram was an officer, director and/or member of Fastercare.

20. During Plaintiff's work for Fastercare, Mark Ingram had operational control over Fastercare's compliance with the overtime wage provisions of the FLSA/PPPA. Mark Ingram made policy, practice, and/or operational decisions which resulted in the FLSA/PPPA violations complained of by Plaintiff in this lawsuit.

21. During Plaintiff's work for Fastercare, Mark Ingram was active in the daily business operations of Fastercare and had decision making authority and/or responsibility for Fastercare's compliance with the overtime wage provisions of the FLSA/PPPA with respect to Plaintiff and other hourly paid nurse practitioners working for Fastercare.

22. Mark Ingram had the power to hire and fire Plaintiff and other hourly paid nurse practitioners working for Fastercare.

23. Mark Ingram had supervisory authority over the Plaintiff and other hourly paid nurse practitioners working for Fastercare.

24. Mark Ingram determined the terms and conditions of employment and/or work for Plaintiff and other hourly paid nurse practitioners working for Fastercare. Such terms and conditions included whether Plaintiff and other hourly paid nurse practitioners working for Fastercare were labeled as W-2 employees or 1099 contractors and whether Plaintiff and other hourly paid nurse practitioners working for Fastercare were paid all overtime premium compensation owed for all overtime hours worked in each workweek.

25. Mark Ingram made payroll decisions as to Plaintiff and other hourly paid nurse practitioners working for Fastercare. Such payroll decisions including determining the methods, rates, amounts, and timing of compensation. Such payroll decisions also included whether Plaintiff and other hourly paid nurse practitioners of Fastercare were labeled as W-2 employees or 1099 independent contractors, and whether they were paid overtime premium pay for all weekly overtime hours worked.

26. Mark Ingram had the authority to determine the policy for maintaining work records and/or employment records for Plaintiff and other hourly paid nurse practitioners working for Fastercare.

27. Mark Ingram was/is an employer of Plaintiffs and the putative collective action members pursuant to the FLSA. Additionally, or in the alternative, Mark Ingram, along with Fastercare and/or Misty Ingram, is/was a joint employer of Plaintiff and the putative collective action members.

**Misty Ingram**

28. Misty Ingram is a natural person.

29. During Plaintiff's work for Fastercare, Misty Ingram was an officer, director and/or member of Fastercare.

30. Misty Ingram currently represents to the public that she is the managing partner of Fastercare.

31. During Plaintiff's work for Fastercare, Misty Ingram had operational control over Fastercare's compliance with the overtime wage provisions of the FLSA/PPPA. Misty Ingram made policy, practice, and/or operational decisions which resulted in the FLSA/PPPA violations complained of by Plaintiff in this lawsuit.

32. During Plaintiff's work for Fastercare, Misty Ingram was active in the daily business operations of Fastercare and had decision making authority and/or responsibility for Fastercare's compliance with the overtime wage provisions of the FLSA/PPPA with respect to Plaintiff and other hourly paid nurse practitioners working for Fastercare.

33. Misty Ingram had the power to hire and fire Plaintiff and other hourly paid nurse practitioners working for Fastercare.

34. Misty Ingram had supervisory authority over the Plaintiff and other hourly paid nurse practitioners working for Fastercare.

35. Misty Ingram determined the terms and conditions of employment and/or work for Plaintiff and other hourly paid nurse practitioners working for Fastercare. Such terms and conditions included whether Plaintiff and other hourly paid nurse practitioners working for Fastercare were labeled as W-2 employees or 1099 independent contractors and whether Plaintiff

and other hourly paid nurse practitioners working for Fastercare were paid all overtime premium compensation owed for all overtime hours worked in each workweek.

36. Misty Ingram made payroll decisions as to Plaintiff and other hourly paid nurse practitioners working for Fastercare. Such payroll decisions including determining the methods, rates, amounts, and timing of compensation. Such payroll decisions also included whether Plaintiff and other hourly paid nurse practitioners of Fastercare were labeled as W-2 employees or 1099 independent contractors, and whether they were paid overtime premium pay for all weekly overtime hours worked.

37. Misty Ingram had the authority to determine the policy for maintaining work records and/or employment records for Plaintiff and other hourly paid nurse practitioners working for Fastercare.

38. Misty Ingram was/is an employer of Plaintiffs and the putative collective action members pursuant to the FLSA. Additionally, or in the alternative, Misty Ingram, along with Fastercare and/or Mark Ingram, is/was a joint employer of Plaintiff and the putative collective action members.

**Jurisdiction**

39. Plaintiff incorporates the other sections of this complaint by reference as if set forth fully in this section.

40. The Court has personal jurisdiction over Defendant based on both general and specific jurisdiction.

41. During all times relevant to this lawsuit, Defendant has done business in the State of Texas and continues to do business in the State of Texas.

42. The Court has subject matter jurisdiction over this case based on federal question jurisdiction, 28 U.S.C. § 1331, because Plaintiff bases her claims on federal law, namely the FLSA/PPPA.

## FACTUAL BACKGROUND

43. Plaintiff incorporates the preceding paragraphs by reference as if set forth fully in this section.

44. Fastercare is a stand-alone medical center in Richardson, Texas and represents/advertises to the public that it is capable of diagnosing and treating a wide range of medical problems. Fastercare represents/advertises to the public that its services include x-rays, facture stabilization and care, IV fluids and medications, CLIA accredited lab testing, urine and blood testing pregnancy testing, and fast tests for strep, mono, and flu. Fastercare advertises treatment for cough, cold, flu, fever, asthma symptoms, allergy symptoms, sinus infections, ear infections, pneumonia, bites, stings, rashes, poison ivy, sore throats, diarrhea/indigestion, UTI, and pink eye. Fastercare also represents/advertises to the public that it provides flu shots and TB testing in addition to evaluation and treatment of minor abdominal pain, minor accidents and injuries, allergic reactions, dehydration, lacerations, minor burns, fracture care/broken bones, shortness of breath, and removal of foreign objects from the body.

45. In connection with its medical services, Fastercare employs many workers including nurse practitioners.

46. Plaintiff worked for Fastercare as an hourly paid nurse practitioner from approximately July 2017 to approximately May 2020.

47. Plaintiff did not practice medicine for Defendants.

48. No hourly paid nurse practitioners of Defendants practice medicine while they work(ed) for Defendants.

49. Between approximately July 2017 to approximately May 2019, Defendants paid/labeled Plaintiff as a 1099 status independent contractor. From approximately May 2019 to approximately November 2019, Defendants paid/labeled Plaintiff as a W-2 status employee. From approximately November 2019 to May 2020, Defendants paid/labeled Plaintiff as a 1099 status independent contractor. The decisions to pay/label Plaintiff as a 1099 status independent contractor or W-2 status employee were made by Mark Ingram and Misty Ingram. In connection with the last change in status in approximately November 2019, Misty Ingram stated to Plaintiff that, along with Mark Ingram, she had made the decision to convert Plaintiff back to 1099 status independent contractor because it saved money.

50. Under the FLSA/PPPA, bona fide independent contractors are not entitled to overtime premium pay whereas employees are entitled to such pay. Additionally, employers must generally submit Federal Insurance Contributions Act ("FICA") taxes for employees, and that FICA tax is levied on both the employer and the employee. Companies are not required to pay and/or submit FICA taxes for bona fide independent contractors. There are other benefits of employment provided and/or paid by employers for their employees that are not provided and/or paid for bona fide independent contractors.

51. During Defendants' unilateral changes of Plaintiff's label between 1099 independent contractor and W-2 employee, there were no material changes in Plaintiff's job duties, work location, typical hours worked, methods of pay, or rates of pay other than Plaintiff not being paid overtime premium pay for overtime hours worked in addition to Defendants not withholding and submitting FICA taxes and federal income taxes.

52. During some workweeks in which Defendants correctly labeled Plaintiff as W-2 employee, they did not pay Plaintiff time and one-half her regular rate of pay for all overtime hours

worked. For example, in the pay period starting August 4, 2019 and end ending August 17, 2019, Plaintiff worked at least 94.25 hours and was labeled as a W-2 employee. During that time period, Plaintiff was paid straight time pay of $70 per hour for 75.25 hours and weekend shift differential pay of $75 per hour for 19 hours. However, although Plaintiff worked overtime hours during those workweeks, Defendants did not pay her any overtime premium pay for those overtime hours worked.

53. During all time periods that Defendants labeled Plaintiff as a so-called independent contractor, they did not pay Plaintiff time and one-half her regular rate of pay for each and every hour worked over 40 although Plaintiff regularly worked over 40 hours per workweek during such time periods.

54. Despite being labeled as so-called independent contractor, Plaintiff was an employee of Defendants pursuant to the FLSA's economic realities test at all material times.

55. Plaintiff worked exclusively for Defendants as a nurse practitioner for many consecutive years.

56. In connection with working for Fastercare as a nurse practitioner labeled as a so-called 1099 independent contractor:

    a. Plaintiff performed the work assigned to her by Fastercare managers and worked a weekly schedule set by Fastercare managers. Plaintiff was supervised by Fastercare managers, and her work as a nurse practitioner was supervised by medical doctor(s) employed by and/or working for Defendants.

    b. Plaintiff regularly worked in excess of 40 hours per workweek. Plaintiff's weekly hours worked for Defendants were to an extent that Plaintiff could not and did not perform work for earned income outside of work for Defendants as

a nurse practitioner. For example, an average workweek had Plaintiff working 50 to 60 hours for Defendants. Some workweeks had Plaintiff working over 80 hours for Defendants.

c. Defendants provided Plaintiff with the supplies and equipment needed to perform her nurse practitioner job duties for Defendants at Defendants' business location.

d. Plaintiff was not permitted and did not hire employees to assist her with her nurse practitioner work for Defendants.

e. Plaintiff did not exercise sufficient, if any, control over a meaningful part of the working relationship with Defendants so as to be a separate economic entity from Fastercare. Plaintiff was simply a part of Defendants' workforce performing job duties and work that were integral parts of Defendants' medical services business operations.

f. Plaintiff provided no material investments in Defendants' business operations, and Defendants' investments in their medical services business operations exceed the investments, if any, of Plaintiff in connection with her work for Defendants. For example, Defendants provided the facility, medical equipment, medications, medical supplies, office supplies, and other necessary equipment and supplies where Plaintiff worked providing services to Defendants' customers/patients.

g. Plaintiff was paid an hourly rate of pay by Defendants, and at times, a weekend shift differential that was also paid on an hourly basis. Plaintiff's methods and rates of pay were determined by Defendants as opposed to Plaintiff. The more

    hours Plaintiff worked for Defendants, the more money she earned. Plaintiff had no opportunity for loss. Instead, there was only opportunity for earned income based upon the number of hours worked for Defendants. Accordingly, Defendants controlled all opportunities for profit and loss in connection with Plaintiff's nurse practitioner work for Defendants.

  h. All major components open to initiative--advertising, pricing, and business decision making were controlled by Defendants. For example, Defendants advertised the medical services it provided in connection with Plaintiff's nurse practitioner work for Defendant.

  57. During the time period relevant to this lawsuit, Defendants had and continue to have several other workers performing work as hourly paid nurse practitioners at the same location as Plaintiff. Those other nurse practitioners have/had substantially similar job duties as Plaintiff. Like Plaintiff, those nurse practitioners are/were supervised by Defendants' managers, namely Mark Ingram and Misty Ingram, work(ed) exclusively for Defendants at the direction of Defendants, are/were provided with all material supplies and equipment to do their jobs for Defendants. Like Plaintiff, the methods and rates of pay for those nurse practitioners is/was determined by Defendants. Like Plaintiff, those nurse practitioners make/made no material investment in Defendants' business operations. Like Plaintiff, those nurse practitioners typically work(ed) for exclusively for Defendants for long periods of time. Like Plaintiff, those other nurse practitioners have/had no control over their opportunity for profit or loss in connection with their work for Defendants. Like Plaintiff, those nurse practitioners are/were economically dependent on Defendants when they worked for Defendants and were labeled as so-called 1099 independent contractors. Like Plaintiff, those other nurse practitioners regularly work(ed) in excess of 40 hours

in a workweek but are not/were not paid time and one-half their respective regular rates of pay by Defendants for all hours worked over 40 in each and every such workweek during the relevant time period.

58. Defendants are and were required to pay Plaintiff and the putative collective action members time and one-half their respective regular rates of pay when they worked in excess of 40 hours in each and every seven-day workweek pursuant to 29 U.S.C. § 207(a)(1).

59. Defendants do not and did not pay Plaintiff and the putative collective action members time and one-half their respective regular rates of pay for each and every hour worked over 40 in each workweek in the time period relevant to this lawsuit.

60. The failure of Defendants to pay Plaintiff and the putative collective action members time and one-half their respective regular rates of pay for each and every hour worked over 40 in each seven-day workweek in the time period relevant to this lawsuit is a violation of the FLSA/PPPA.

## CONTROLLING LEGAL RULES

61. The FLSA states that "no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1).

62. "Employ" includes to suffer or permit work. 29 U.S.C. § 203(g).

63. Whether an individual is an employee, who is covered by the FLSA's/PPPA's provisions, as opposed to an independent contractor, who is not covered by the FLSA/PPPA, is determined by the economic realities test. *Hopkins v. Cornerstone Am.*, 545 F.3d 338, 343 (5th

Cir. 2008). The purpose of the economic realities test is to determine whether "the worker is economically dependent upon the alleged employer or is instead in business for himself." *Id.*

64. District Courts within the Fifth Circuit consider the following five factors in assessing the economic reality of the working relationship: (1) the degree of control exercised by the alleged employer; (2) the extent of the relative investments of the worker and the alleged employer; (3) the degree to which the worker's opportunity for profit or loss is determined by the alleged employer; (4) the skill and initiative required in performing the job; and (5) the permanency of the relationship. *Id.* at 343 (*citing Herman v. Express Sixty-Minutes Delivery Serv., Inc.,* 161 F.3d 299, 303 (5th Cir. 1998)). The Fifth Circuit further holds that: "[n]o single factor is determinative. Rather, each factor is a tool used to gauge the *economic dependence* of the alleged employee, and each must be applied with this ultimate concept in mind." *Id.* (*citing Herman*, 161 F.3d at 303 and *Brock v. Mr. W Fireworks, Inc.,* 814 F.2d 1042, 1043-44 (5th Cir. 1987)).

65. Individual owners, officers, and/or managers may be liable, along with corporate employer, for FLSA/PPPA damages to employees. *See, e.g., Gray v. Powers*, 673 F.3d 352, 357 (5th Cir. 2012). ("The dominant theme in the case law is that those who have operating control over employees within companies may be individually liable for FLSA violations committed by the companies.").

66. "When determining whether joint employment exists, courts examine the totality of the circumstances—focusing on the economic realities of the particular employment relationship." *Parker v. ABC Debt Relief Co.*, No. 3:10-CV-1332-P, 2013 WL 371573, at *4 (N.D. Tex. Jan. 28, 2013) (citing *Reich v. Prima Corp.*, 890 F.Supp. 586, 590 (N.D.Tex.1995); *Wirth v. Lone Star Steel Co.*, 405 F.2d 668, 669 (5th Cir.1968)). "Joint employment is construed broadly, and labels and contractual terms used in a particular relationship are largely unimportant." *Id.*

67. Federal law requires employers to make and keep accurate and detailed payroll data for non-exempt employees. 29 U.S.C. § 211(c); 29 C.F.R. § 516.2. Amongst other things, the regulations require employers to make and keep payroll records showing data such as the employee's name, social security number, occupation, time of day and day of week which the workweek begins, regular hourly rate of pay for any week in which overtime pay is due, hours worked each workday and total hours worked each workweek, total daily or weekly straight time earnings, total premium pay for overtime hours, total wages paid each pay period and date of payment and pay period covered by the payment, and records of remedial payments. 29 C.F.R. § 516.2(a)&(b). Employers are required to maintain the foregoing data for a minimum of three years. 29 C.F.R. § 516.5.

68. Where the employer does not keep an accurate record of the daily and weekly hours worked by an employee as required by the FLSA, the employee may prove their unpaid overtime hours and damages "as a matter of just and reasonable inference." *Olibas v. Native Oilfield Servs., LLC*, 104 F. Supp. 3d 791, 801 (N.D. Tex. 2015) (Boyle, J.), *aff'd sub nom. Olibas v. Barclay*, 838 F.3d 442 (5th Cir. 2016).

69. The FLSA defines the "regular rate" as including "all remuneration for employment paid to, or on behalf of, the employee … ." 29 U.S.C. § 207(e).

70. With a few limited exceptions, all remuneration given to an employee must be included in the employee's regular rate calculation. 29 U.S.C. § 207(e); 29 C.F.R. § 778.108; *accord Allen v. Board of Pub. Educ. For Bibb Cty.*, 495 F. 3d 1306, 1311 (11th Cir. 2007); *see also Johnson v. Big Lots Stores, Inc.*, 604 F. Supp. 2d 903, 927 (E.D. La. 2009). The employer has the burden of proof to establish that any remuneration may be excluded from the regular rate of

pay. *Meadows v. Latshaw Drilling Co., LLC*, 338 F. Supp. 3d 587, 591 (N.D. Tex. 2018) (Godbey, J.).

71. Failing to pay the required overtime premium for hours worked over 40 in a workweek is a violation of 29 U.S.C. § 216(b).

72. Nurse practitioners do not "qualify to practice medicine under Texas law." *Belt v. Emcare, Inc.*, 444 F.3d 403, 412 (5th Cir. 2006).

### **FLSA/PPPA CLAIMS**

73. Plaintiff incorporates the preceding paragraphs by reference as if set forth fully in this section.

74. At all times relevant to this lawsuit, Plaintiff and the putative collective action members are/were employees of Fastercare, Mike Ingram, and/or Misty Ingram pursuant to the FLSA/PPPA. 29 U.S.C. § 203(e); *Wirtz*, 405 F.2d at 669-70. Although Defendants, at times, labeled/treated Plaintiff and the putative collective action members as a so-called 1099 independent contractors, the economic reality is that Plaintiff and the putative collective action members are/were employees of Fastercare, Mike Ingram, and/or Misty Ingram under the FLSA/PPPA. Additionally, or in the alternative, Fastercare, Mike Ingram, and/or Misty Ingram are/were joint employers of Plaintiff and the putative collective action members pursuant to the FLSA/PPPA.

75. At all material times, Fastercare has been an eligible and covered employer pursuant to the FLSA. 29 U.S.C. § 203(d).

76. At all material times, Fastercare is and has been an enterprise engaged in commerce as that phrase is used in connection with the FLSA/PPPA.

77. Plaintiff and the putative collective action members routinely work(ed) in excess of 40 hours per seven-day workweek for Defendants in the time period relevant to this lawsuit.

78. At all times relevant to this lawsuit, Plaintiff and the putative collective action members are and/or were entitled to overtime premium compensation from Defendants at one and one-half times their respective regular rates of pay for each and every hour worked over 40 in all workweeks. 29 U.S.C. § 207(a)(1).

79. Defendants failed to pay Plaintiff and the putative collective action members overtime premium pay at one and one-half times their respective regular rates of pay for all hours worked over 40 in each and every seven-day workweek during the time period relevant to this lawsuit.

80. Defendants do not and did not maintain an accurate number of the daily and weekly hours worked by Plaintiff and the putative collective action members for each workday and workweek during the relevant time period of this lawsuit. 29 C.F.R. § 516.2(a).

81. Defendants' violations of the FLSA are and were willful within the meaning of 29 U.S.C. § 255(a). *See Singer v. City of Waco*, 324 F.3d 813, 821-22 (5th Cir. 2003) (upholding a jury finding of willfulness). For example, Plaintiff was told that Defendants decided to change her label and pay structure to that of a 1099 independent contractor in approximately November 2019 so that Defendants could save money. Also, shortly before the end of her work for Defendants, Plaintiff told Defendants that she believed she should be paid overtime pay even when labeled as an independent contractor after reading a story about a case styled *Belt v. Emcare*, but was told by Defendants that they did not have to pay her overtime pay because she was allegedly an independent contractor. Plaintiff, on behalf of herself and all others similarly situated, specifically pleads recovery for the maximum limitations period allowed by the FLSA/PPPA.

82. Plaintiff and the putative collective action members seek all damages available for Fastercare's, Mike Ingram's, and/or Misty Ingram's violations of the FLSA/PPPA.

## FLSA/PPPA COLLECTIVE ACTION

83. Plaintiff incorporates the preceding paragraphs by reference as if set forth fully in this section.

84. Plaintiff seeks to represent a collective action under 29 U.S.C. § 216(b) on behalf of herself and all current and/or former hourly paid nurse practitioners who work/worked for Defendants that are not/were not paid time and one-half their respective regular rates of pay by Defendants for all hours worked over 40 during each seven-day workweek in the time period relevant to this lawsuit. Because Defendants do not and did not pay all overtime premium compensation to its hourly paid nurse practitioners who routinely work(ed) in excess of 40 hours per workweek, Plaintiff and the putative collective action members are all similarly situated within the meaning of Section 216(b) of the FLSA/PPPA.

85. Plaintiff reserves the right to redefine the class, request more than one class, and/or request sub-classes relative to any motion for conditional certification filed in this lawsuit.

## DAMAGES AND PRAYER

86. Plaintiff asks that the Court issue a summons for Defendants to appear and answer, and that Plaintiff and the Collective Action Members be awarded a judgment against Fastercare, Mike Ingram, and/or Misty Ingram and/or order(s) from the Court for the following:

  a. An order conditionally certifying this case as a FLSA/PPPA collective action and requiring notice to be issued to all putative collective action members;

  b. All damages allowed by the FLSA/PPPA, including back overtime wages;

  c. Liquidated damages in an amount equal to back FLSA/PPPA mandated wages;

  d. Legal fees;

  e. Costs;

      f.      Post-judgment interest; and/or

      g.      All other relief to which Plaintiff and the Collective Action Members are entitled.

Date: May 27, 2020.

                                        Respectfully submitted,

                            By:     <u>s/ Allen R. Vaught</u>
                                        Allen R. Vaught
                                        Attorney-In-Charge
                                        TX Bar No. 24004966
                                        avaught@txlaborlaw.com
                                        Nilges Draher Vaught PLLC
                                        1910 Pacific Ave., Suite 9150
                                        Dallas, Texas 75201
                                        (214) 251-4157 – Telephone
                                        (214) 261-5159 – Facsimile

                                        ATTORNEYS FOR PLAINTIFF